## Taylor, Appellant, *v.* Taylor.

*Divorce—Setting aside divorce.*

A petition by a woman to set aside a decree of divorce entered against her, will not be granted where it appears that she had knowledge of the contents of the libel and filed an answer thereto, that she received notice of the final rule, but had not attended the hearing because of statements made to her by the libelant which led her to think that it would be unsafe for her to come within the jurisdiction because of the adultery charged in the libel, and it further appears that the testimony showed a good ground for divorce, and the petitioner does not show any defense, in her petition to set aside the decree.

Argued Oct. 18, 1912. Appeal, No. 106, Oct. T., 1912, by plaintiff, from order of C. P. No. 5, Phila. Co., March Term, 1911, No. 45, refusing to set aside decree of divorce in case of John T. Taylor v. Helen Taylor. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Petition to set aside decree of divorce.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was order refusing to set aside decree.

*Daniel W. Simkins,* for appellant.—It is an elementary principle ·of law that fraud vitiates everything it touches and it is well settled in Pennsylvania that the courts have power to vacate a divorce decree if the court "was without jurisdiction to enter it, or that it was procured by fraud or imposition:" Given v. Given, 25 Pa. Superior Ct. 467; Allen v. Maclellan, 12 Pa. 328; Boyd's Appeal, 38 Pa. 241; Young v. Young, 17 Minn. 181.

*Abraham M. Beitler,* for appellee.—All the authorities show that the court below was right in saying that respondent's guilt was conclusively shown: Matchin v. Matchin, 6 Pa. 332; Com. v. Mosier, 135 Pa. 221; Kerr v. Kerr, 134 App. Div. (N. Y.) 141 (118 N. Y. Supp. 801); McCune v. McCune, 31 Pa. Superior Ct. 248; Moyer v. Moyer, 78 N. J. Eq. 588 (81 Atl. Repr. 1111): Clark v. Clark, 78 N. J. Eq. 304 (81 Atl. Repr. 1126).

Even if the appellant did not know that testimony was being taken she knew on March 14 that testimony had been taken. If she had any defense, then was the time for her to act. The affidavit filed shows on its face that she has no defense. The authorities all show that a judgment will not be opened where the party against whom the judgment has been entered fails to show that he has any defense on the merits: Caldwell v. Carter, 153 Pa. 310; Shenk v. Hacker, 3 Pa. Superior Ct. 439; Perry v. Perry, 15 Phila. 242; Liem v. Liem, 5 Kulp, 178; Everett v. Morrison, 21 N. Y. Supp. 328.

OPINION BY HENDERSON, J., February 27, 1913:

This appeal is from the refusal of the court below to grant a rule to show cause why the decree of divorce entered March 27, 1911, should not be set aside. The respondent is the petitioner. She sets forth at length the history of the transactions leading up to the decree and alleges in substance that the court was imposed on by the plaintiff with respect to the manner in which the case was brought to issue and heard. She alleges that her

answer was not sworn to as it appears to be in the proceeding; that the warrant of attorney to counsel to appear for her on file in the case was not signed by her although she did sign a paper which she supposed was a warrant of attorney to appear in her behalf which signature was obtained through threats and intimidations practiced by the magistrate before whom she was brought on a charge of adultery and one Victor J. Hamilton, who was acting as an agent for the plaintiff; that the complainant said to her that the divorce proceeding would not be prosecuted with effect—that the petitioner had better go to Chicago to her mother until the affair blew over; that because of the advice of her husband and the solicitation and importunity of the said Hamilton and Alfred W. Hamilton the petitioner went to Chicago, the said Alfred W. Hamilton furnishing the money to pay her fare; that deponent returned from Illinois and went to Trenton, New Jersey, about January 30, 1911, being influenced by a desire to be nearer her children and not coming into the state of Pennsylvania because the plaintiff had advised against it and because the petitioner feared the result of the prosecution for adultery; that she conversed with the plaintiff over the telephone on the day following her arrival in Trenton at which time the complainant promised to send Alfred W. Hamilton to her with some money; that Hamilton came to Trenton and tried to induce her to return to Chicago but the petitioner declined so to do; that on or about February 3, 1911, the said Hamilton again tried to induce her to return to Chicago and told her that although she was not within the jurisdiction of the commonwealth of Pennsylvania she could nevertheless be taken into custody and brought back to Philadelphia to be tried on the charge of adultery; that she never received any notice that meetings would be held by the master appointed in the case and knew nothing of such meetings being held until after the final rule in divorce had been made absolute; that on or about March 14, 1911, she received a letter addressed to her

by registered mail at Trenton from the plaintiff's attorney inclosing a notice that a final rule in divorce had been granted against her to be heard on Monday, March 27, 1911, at which time she could appear and show cause, if any, why such divorce should not be granted; and this she says was the first notice that the divorce proceeding had not been dropped and was still pending. She denies that Alfred W. Hamilton served a notice of the final rule on her on March 17, 1911, as he appears from the record to have done; she admits that he endeavored to serve a notice of the final rule on her but she refused to receive it. She further represents that on March 23, 1911, she received a letter from the office of the district attorney of Philadelphia county addressed to her requiring her to appear on Friday morning, March 24, 1911, to answer the charge of adultery; that she immediately called up the plaintiff by telephone and told him of the notice and that the plaintiff said he would see his attorney and that he and the attorney would fix it so that it would not be necessary for her to appear but that if she came to Philadelphia before the following Monday morning he would not answer for the consequences to her and induced her to promise not to come to Philadelphia before the following Monday, stating that unless she did so promise he would not fix the matter so it would not be necessary for her to appear in the adultery case. She sets forth that she did not come to Philadelphia on March 27, the day fixed for the hearing of the final rule in divorce, because the plaintiff had induced her to believe that it was unsafe for her to do so and because she was fearful of the consequences to herself. She did, however, come to Philadelphia on the next day in order to see her children before going to Chicago at which time she learned that a decree was entered in the case. On April 1, 1911, the petitioner came to Philadelphia and took a position in a store in that city. Whether she continued to live in the city thereafter she does not state. The petition contains much that is not relevant to the present inquiry.

It is apparent, however, from the record that the libel was filed setting forth adultery as the cause of divorce and that the subpœna was served on the respondent. It also appears from the appellant's petition that she understood that she was giving a warrant of attorney for an appearance in the divorce case and that she signed an answer to be filed therein. It clearly appears, too, from her own admission that she received notice of the final rule at Trenton, New Jersey, about two weeks before the date named in the rule. Conceding that she may have been put off her guard by the alleged declarations of her husband as to his object in instituting the divorce proceeding she had timely warning that the case was being prosecuted and that a date was fixed for a final hearing on the rule to show cause why a divorce should not be decreed. Having admitted that she was arrested near midnight on Saturday night, with a man in whose company she was found, on a charge of adultery preferred by her husband, her allegation that she was led to believe that the proceeding instituted the next Monday for divorce was not to be prosecuted because her husband said that he did not think she was guilty of the charge has not the convincing effect which it might have if accompanied by specific denial of the facts set forth in the testimony of the witnesses called in the divorce proceeding. When, therefore, it appears that the court had jurisdiction of the defendant that the case was duly proceeded with to the time for a decree of which time the petitioner had notice and that she failed to make any move to vacate the decree until February, 1912, at which time her application for the rule was made, it is important that it be made to appear that a valuable right was lost and that by the connivance of the complainant and his counsel and agents she lost the opportunity to present a defense which would have availed to prevent the decree which was entered. A careful examination of the petition satisfies us that the petitioner has not undertaken in good faith to set forth a defense to the charge contained in the

libel and the testimony in the divorce proceeding was all before her or accessible to her when the petition was prepared. That testimony contained evidence stating times and places, the names of persons and the circumstances which tended to establish the charge and which as evidence was abundantly sufficient to make out a case. It was the plain duty of the petitioner if she wished a trial of the case on its merits to deny the material statements of the witnesses for the plaintiff. If she were not at the hotels named in company with the man named, under the circumstances described by the witnesses, that could be easily and specifically denied. If the circumstances had a different complexion and explanation from that which they apparently had, this explanation could have been given. It would be profitless to open the door for a second trial unless there is such new evidence to be introduced and such contradiction of the plaintiff's case as might lead to a different decree. The appellant seems to have absented herself from the city because of apprehension that she might be proceeded against in the criminal case, and while it may not have been to the credit of her husband that that was hanging over her it is not a sufficient reason to move the court to open the case for further investigation. The opinion of the court below indicates that if a meritorious defense had been set up the circumstances surrounding the beginning of the case would have led to a different conclusion than that entered on the record. And we agree with the learned judge that the absence of such an allegation of a meritorious defense is decisive against the propriety of granting the rule. The general denial "that the deponent did not as charged in the libel on the 14th day of January, A. D. 1911, and on divers dates and times prior thereto at the county of Philadelphia and state of Pennsylvania commit adultery with one known to the libellant as Walter L. Allen" does not meet the charge and evidence presented in the libel and testimony. If she testified to that general statement it would not be sufficient to overcome the

evidence descriptive of the events in, which she had a part which form the basis for' the divorce proceeding. We are not persuaded that the appellant's case exhibited an abuse of discretion on the part of the court below in refusing to grant a rule to open the decree.

The order is, therefore, affirmed.